UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN FREDY MONTOYA ECHEVERRIA,<br><br>            Plaintiff,<br><br>    v.<br><br>WILLIAM BARR, et al.,<br><br>            Defendants. | Case No.  20-cv-02917-JSC<br><br>**ORDER RE: PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 10 |

Petitioner Juan Fredy Montoya Echeverria is a citizen and national of El Salvador who has resided in the United States since 2011. Petitioner voluntarily surrendered himself to Immigration and Customs Enforcement ("ICE") in August 2019 and he has been detained at the Yuba County Jail in Marysville, California ever since pursuant to 8 U.S.C. § 1226(a). On April 29, 2020, Petitioner filed a writ of habeas corpus alleging that his detention violated his Fifth Amendment due process rights.[1] (Dkt. No. 4.) Shortly thereafter, Petitioner filed the underling motion for a temporary restraining order seeking his immediate release from detention or a new custody hearing before an Immigration Judge. (Dkt. No. 10.) After careful consideration of the parties briefing, the Court concludes that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), and DENIES the motion for a temporary restraining order. Petitioner has failed to demonstrate a likelihood of success on the merits of his legal claims.

//

//

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 9, 13, 18.)

United States District Court
Northern District of California

**FACTUAL BACKGROUND**

Petitioner was born in El Salvador and is 24 years old. (Dkt. No. 4-3 at 2; Dkt. No. 4-5 at 2.[2]) Prior to his detention, Petitioner lived in San Jose, California with his father. (Dkt. No. 4-3 at ¶ 37.)

Petitioner entered the United States in 2011 fleeing gang violence from the MS-13 gang in El Salvador. (Dkt. No. 4-4 at 11.[3]) After arriving in the United States, he started hearing voices. (*Id*. at 12.) He hears the voices every day, but they are especially bad at night and he cannot tell if the voices are real or imaginary. (*Id*.) Petitioner has several misdemeanor convictions between April 4, 2016 through June 20, 2019. (Dkt. No. 23-3 at 3; Dkt. No. 23-4 at 4-5.[4]) He was in the process of finishing his parole requirements when he was arrested by ICE. (Dkt. No. 4-3 at ¶ 4.) Although he had a reinstated removal order, Petitioner self-surrendered at the ICE office in San Francisco on August 28, 2019. (*Id*.) He was then taken to the Yuba County Jail where he remains. (*Id*.)

On October 24, 2019, Petitioner was denied bond by an Immigration Judge based on dangerousness. (Dkt. No. 4-3 at ¶ 5; Dkt. No. 23-3 at 2.) Prior to his arrest, Petitioner had filed an application for asylum, withholding of removal, and protection under the Convention Against Torture. (*Id.* at ¶ 5; Dkt. No. 4-4 at 14.) Following his detention, the Immigration Judge scheduled a *Matter of M-A-M* competency hearing.[5] (Dkt. No. 4-4 at 15.) In preparation for the

---

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[3] These facts are taken from Petitioner's pre-hearing brief submitted in support of his applications for asylum, withholding of removal, and protection under the Convention Against Torture. (Dkt. No. 4-4.) Although the brief says that the statement of facts is taken from Petitioner's declaration, the declaration itself is not part of the record here. The Court nonetheless relies on the facts as contained in the brief because Petitioner has not submitted a declaration in this action and there is no other source for these facts—his attorney's declaration likewise relies on the statement of facts in the pre-hearing brief. (Dkt. No. 4-3.)

[4] The record is unclear with respect to the number of Petitioner's convictions. The government contends that he has 10 arrests with 7 convictions. (Dkt. No. 23-3 at 3; Dkt. No. 23-4 at 4-5.) Petitioner vaguely objects that the "[t]he government highlighted arrests for which Petitioner was not convicted," but does not dispute that he has 7 convictions. (Dkt. No. 28 at 12:22-23.) Instead, Petitioner notes that his convictions were all for misdemeanors with sentences under 180 days. (*Id*.)

[5] In *Matter of M-A-M*, 25 I. & N. Dec. 474 (BIA 2011), the Board of Immigration Appeals

hearing, on December 13, 2019, Petitioner had an in-depth psychological evaluation by a licensed clinical social worker who diagnosed him with schizophrenia and adjustment disorder. (*Id.*; Dkt. No. 4-11 at ¶¶ 3-4.) On February 6, 2020, Petitioner appeared in person at the San Francisco Immigration Court for his individual hearing at which he was found competent and credible.[6] (Dkt. No. 4-3 at ¶ 8.) A month later, the Immigration Judge denied his applications for relief and ordered Petitioner removed to El Salvador. (*Id.*) Two weeks later, Petitioner filed an appeal of the Immigration Judge's decision with the BIA. (*Id.* at ¶ 9.) The BIA has yet to issue a briefing schedule regarding his appeal. (*Id.*) Petitioner's counsel attests that in her experience BIA appeals of a removal order take between six months to over one and a half years. (*Id.* at ¶ 13.)

On March 19, Petitioner's counsel submitted an "urgent request for humanitarian parole, asking ICE to release [Petitioner] in light of the rapidly worsening global COVID-19 pandemic and [Petitioner's] severe mental illness." (*Id.* at ¶ 10.) Five days later, Petitioner's counsel was advised by telephone that the request was being denied because Petitioner was not an "arriving alien." (*Id.*) On March 27, Petitioner filed a motion for a subsequent custody redetermination based on changed circumstances likewise based on Petitioner's mental health condition and COVID-19. (*Id.* ¶ 11.) On April 3, the Immigration Judge denied the motion finding that "changed circumstances [were] not established." (*Id.*; *see also* Dkt. No. 22-1 (finding that neither changed circumstances "demonstrates a change that would potentially effect the courts previous finding that the respondent is a danger to society").) On April 9, Petitioner filed an appeal of the denial of the bond hearing with the BIA. (*Id.*) The BIA has yet to issue a briefing schedule regarding his appeal of the denial of a bond redetermination hearing. (*Id.*) Petitioner's counsel attests that in her experience appeals of bond denials take between six months and one and a half years. (*Id.* at ¶ 14.)

---

("BIA") set forth a framework for Immigration Judge's to address issues of mental competency in cases where there is an indicia of incompetency.

[6] According to Petitioner's counsel, at his competency hearing, the Immigration Judge had "instituted certain procedural safeguards" for his individual hearing including that Petitioner was ordered to appear in person for his hearing, counsel was allowed to ask leading questions, and Petitioner was allowed to take breaks during the hearing. (Dkt. No. 4-3 at ¶6.)

**PROCEDURAL BACKGROUND**

**A. This Habeas Petition**

On April 29, 2020, Petitioner filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Dkt. No. 4.) Shortly thereafter, Petitioner filed the now pending motion for a temporary restraining order which is fully briefed. (Dkt. Nos. 10, 22, 28.)

**B. The *Zepeda-Rivas* Action**

On the same day Petitioner filed his habeas petition, United States District Judge Vince Chhabria issued a temporary restraining order ("TRO") in *Zepeda-Rivas v. Jennings*, No. 20-02731 VC (N.D. Cal.) ("*Zepeda-Rivas*"), and provisionally certified a class that includes current Yuba County Jail detainees. 2020 WL 2059848, at * 1-4. Judge Chhabria's order requires "ICE to provide information and access to detainees to facilitate a process of considering bail requests" and provides for expedited, individual bail determinations for class members in light of the COVID-19 pandemic and the conditions of confinement at the Yuba County Jail. *Id*. at *3. It is undisputed that Petitioner, as a current Yuba County Jail detainee, is a member of the *Zepeda-Rivas* class. In fact, on May 3, Petitioner filed a motion for release in *Zepeda-Rivas*.[7] (*Zepeda-Rivas,* No. 20-2731, Dkt. No. 77-3.) Petitioner's motion for release was denied without prejudice on the same day he filed his motion for a temporary restraining order in this action. (*Id*. at Dkt. No. 107.)

**JURISDICTION**

A district court may grant a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Denmore v. Kim*, 538 U.S. 510, 523 (2003). Here, Petitioner argues that his continued detention violates his due process rights. Thus, the Court has subject-matter jurisdiction pursuant to section

---

[7] The government attached the filings related to Petitioner from *Zepeda-Rivas* to the Declaration of Sharanya Mohan submitted with its opposition, *see* Exhibits D, E, and F, and sought to file these exhibits under seal because Petitioner had filed a motion seeking to proceed under a pseudonym in this action and the *Zepeda-Rivas* filings identified him by name. (Dkt. No. 23.) Because the Court has denied Petitioner's motion to proceed under a pseudonym, the administrative motion to file these exhibits under seal is DENIED as moot.

2241.

The government challenges the Court's jurisdiction over this matter on the grounds that Petitioner is detained in a facility in the Eastern District of California. The government insists that "venue is improper in this judicial district because Petitioner's immediate custodians (the Sheriff of Yuba County and/or the AFOD responsible for YCJ), as well YCJ where Petitioner is housed, are located in the Eastern District of California." (Dkt. No. 22 at 26:20-27:2.) Not so.

ICE's website identifies the "San Francisco Field Office" as the federal entity that oversees immigration detainees at the Yuba County Jail, and specifically directs "Feedback or Complaints" to the "Field Office Director, Enforcement and Removal Operations" located in San Francisco, California. See https://www.ice.gov/detention-facility/yuba-county-jail. Thus, Petitioner properly named David Jennings, Director of the San Francisco Field Office, as a respondent in this action. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1183 (N.D. Cal. 2017) ("[A] petitioner held in federal detention in a non-federal facility pursuant to a contract should sue the federal official most directly responsible for overseeing that contract facility when seeking a habeas writ."). The San Francisco Field Office is located within this Court's territorial jurisdiction. Accordingly, the Northern District is the proper forum to hear this habeas petition. *See id*. at 1187 ("So long as the proper respondent falls within this Court's territorial jurisdiction, habeas jurisdiction exists.") (citing *Rumsfield v. Padilla*, 542 U.S. 426, 442-44 (2004)).

The government submits the declaration of Dana L. Fishburn, who is an Assistant Field Office Director with the DHS, ICE, Enforcement and Removal Operations in the San Francisco Field Office. (Dkt. No. 22-5 at ¶ 1.) Ms. Fishburn attests that she is "currently assigned to the Sacramento Sub-Office within the San Francisco Field Office which is responsible for oversight of the ICE Detainees held at Yuba County Jail in Marysville, California." (*Id*.) The government contends that Ms. Fishburn is "the ICE official most directly responsible for overseeing" the Yuba County Jail, and because she is assigned to the Sacramento Sub-Office, which is located in the Eastern District of California, venue is improper in the Northern District. (Dkt. No. 22 at 26:16.)

The government's argument fails to persuade. Ms. Fishburn's assignment to a "sub-office" that is physically located in the Eastern District of California does not mean that San Francisco

5

Field Office is not the controlling entity for the Yuba County Jail. As the Assistant Field Office Director of the *San Francisco Field Office*, Ms. Fishburn takes orders from the Director of the *San Francisco Field Office*, Mr. Jennings. Thus, Mr. Jennings is the federal official most directly responsible for overseeing the Yuba County Jail. Accordingly, the Northern District is the proper forum to hear this action and the Court has jurisdiction. *See, e.g.*, *Ortuno v. Jennings*, No. 20-cv02064-MMC, 2020 WL 2218965, at *2 (N.D. Cal. May 7, 2020) (finding Northern District proper forum in immigration habeas case involving Yuba County Jail detainees and naming Mr. Jennings as respondent); *Zepeda-Rivas v. Jennings*, No. 20-cv-02731-VC, 2020 WL 2059848, at *2 (N.D. Cal. Apr. 29, 2020) (same); *Doe v. Barr*, No. 20-cv-02263, 2020 WL 1984266, at *5 (N.D. Cal. Apr. 27, 2020) (same).  The government's argument is further undermined by its submission of the Declaration of Polly E. Kaiser, the Deputy Fiedd Director for ICE Enforcement and Removal Operations with the San Francisco Field Office, which the government also submitted with its opposition brief. (Dkt. No. 26 at ¶ 1.)  Ms. Kaiser attests that as Deputy Field Office Director her responsibilities include, among other things, "oversight of aliens detained at the Yuba County Jail ("YCJ") pending removal."  (*Id.* at ¶ 2.)

Finally, the government's reliance on a recent Ninth Circuit order is unavailing. The government asserts that the Ninth Circuit issued an order on April 30, 2020, "indicating the Eastern District of California has jurisdiction over immigration habeas cases filed by detainees held at [Yuba County Jail]." (Dkt. No. 22 at 25:26-27 (citing *Birru v. Barr*, No. 19-72758, Dkt. No. 14-1 (9th Cir. 2020)).)  However, the cited order merely states, in pertinent part:

> [W]e construe petitioner's motion for release from detention as a petition for a writ of habeas corpus and transfer it to the Eastern District of California, where petitioner is being held at the Yuba County Jail, to be considered under 28 U.S.C. § 2241. *See id.* § 2241(b) (a circuit court may "transfer the application [for a writ of habeas corpus] for hearing and determination to the district court having jurisdiction to entertain it").

*Birru*, No. 19-72758, Dkt. No. 14-1 at 2.  Unlike here, the petitioner in *Birru* named only United States Attorney General William Barr as a respondent, and the court did not address whether jurisdiction was proper in any other District. Instead, the court transferred the petition to the Eastern District of California solely on the basis that the petitioner was detained in that District.

6

1   Thus, *Birru* offers no insight into whether the Northern District is a proper forum to hear this
2   petition.[8] As previously discussed, the Court is satisfied that it has subject-matter jurisdiction over
3   this action pursuant to section 2241 and that the Northern District is the proper forum because the
4   Director of the San Francisco Field Office is appropriately named as a respondent.

## LEGAL STANDARD

The standard for issuing a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "Under the original *Winter* standard, a party must show 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "Under the 'sliding scale' variant of the *Winter* standard, if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Id*. (internal quotation marks and citation omitted). Petitioner here only argues the likelihood of success framework.

## DISCUSSION

Petitioner contends that he is entitled to immediate release from immigration custody given the risks of COVID-19 at Yuba County Jail where he is being detained, or alternatively, that he is entitled to a bond hearing before an Immigration Judge because he has been subject to prolonged detention without a custody redetermination hearing in violation of his Fifth Amendment procedural due process rights. The government responds that Petitioner cannot show a likelihood

---

[8] Prior to the Ninth Circuit's April 30 order, the petitioner in *Birru* filed a habeas petition in a related action in this District. *See Birru v. Barr*, et al., No. 20-cv-01285-LHK, 2020 WL 1905581, at *1 (N.D. Cal. Apr. 17, 2020). There is no indication that respondents in that action argued that the court lacked jurisdiction or that venue was improper based on the petitioner's detention at the Yuba County Jail.

of success on the merits of his due process claims because (1) his request for release based on COVID-19 was already considered and denied by Judge Chhabria in *Zepeda-Rivas* (and fails on the merits here), and (2) Petitioner's prolonged detention procedural due process claim is unlikely to succeed because he has been provided adequate process and the claim is subject to dismissal for failure to exhaust.

**A.  Likelihood of Success**

    **1. Petitioner's Substantive Due Process Claim**

The Court declines to consider Petitioner's substantive due process claim based on his alleged risk of exposure to COVID-19.  Petitioner filed a motion for release based on his risk of exposure in *Zepeda-Rivas* which was denied without prejudice.  Petitioner contends that the specific grounds for the denial in *Zepeda-Rivas* "are not clear" because it was denied "without prejudice and without any reasoning." (Dkt No. 28 at 12:12-16.)  Rather than seeking clarification of the order, Petitioner filed an entirely separate motion for release in this action—making no mention of Judge Chhabria's denial in *Zepdea-Rivas*.  The Court will not sanction such judge shopping.  To the extent that Petitioner contends that the government's opposition to the motion for release in *Zepeda-Rivas* was "riddled with erroneous information," Petitioner's recourse is to file a motion for reconsideration in *Zepeda-Rivas*—not to file a new motion for release before a different judge.  (*Id.* at 12:21.)  Petitioner elected to file a motion for release as a class member in *Zepeda-Rivas*—he cannot now seek the same relief before a different judge because he does not like the outcome of his application for release there.

    **2. Petitioner's Procedural Due Process Claim**

The government insists that Petitioner's procedural due process claims fail both because he has been afforded constitutionally adequate process and because he has failed to exhaust his administrative remedies.  The Court begins with the threshold question of exhaustion.

        **a)  Exhaustion of Administrative Remedies**

"Exhaustion can be either statutorily or judicially required." *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004). Statutory exhaustion "may be a mandatory requirement that is jurisdictional." *Id*.  "If, however, exhaustion is a prudential requirement, a

court has discretion to waive the requirement." *Id.*

As previously discussed, "[d]istrict courts are authorized by 28 U.S.C § 2241 to consider petitions for habeas corpus." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), abrogated on other grounds by *Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Section 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus." *Id*. However, the Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Id.*

Once a detainee receives a bond hearing before an Immigration Judge he may appeal the Immigration Judge's decision to the BIA. *Leonardo v. Crawford*, 646 F.3d 1157, 1159 (9th Cir. 2011). If the detainee disagrees with the BIA's decision on appeal he may "file a habeas petition in the district court" to challenge his continued detention. *Id*. Thereafter, "the district court's decision on the habeas petition may be appealed" to the Ninth Circuit. *Id*. Thus, pursuing habeas review of the Immigration Judge's adverse bond determination before the BIA has issued its decision on appeal is improper. *Id*. at 1160. "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Id*.

"[C]ourts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation marks and citation omitted). However, "even if the three *Puga* factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if administrative remedies are inadequate or not efficacious, pursuit of the administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (internal quotation marks and citation omitted).

Petitioner contends that "[t]o all extents practicable, Petitioner has exhausted his administrative remedies," and seeks waiver of further exhaustion should the Court find his current attempts to exhaust inadequate. (Dkt. No. 28 at 10:22-11:6.)   He maintains that waiver here is appropriate because the BIA cannot consider the constitutional issues raised here and Petitioner will suffer irreparable harm if he remains detained because of the COVID-19 pandemic and because he has serious pre-existing health conditions which were diagnosed after his initial bond hearing.

The Court agrees that waiver of Petitioner's exhaustion of administrative remedies is appropriate.  First, "the BIA has no jurisdiction to decide questions of the constitutionality of the immigration laws." *Liu v. Waters*, 55 F.3d 421, 426 (9th Cir. 1995). As the BIA has explained, it "must apply the statute as written to the cases that come before us. It is well settled that we lack jurisdiction to rule on the constitutionality of the Act and the regulations we administer.... [E]ven if we were to perceive a constitutional infirmity in the unambiguous statute before us, we would be without authority to remedy it." *In Re Fuentes-Campos*, 21 I. & N. Dec. 905, 912 (BIA 1997). Second, this Court follows the vast majority of other cases which have "waived exhaustion based on irreparable injury when an individual has been detained for months without a bond hearing, and where several additional months may pass before the BIA renders a decision on a pending appeal." *Rodriguez Diaz v. Barr*, No. 4:20-CV-01806-YGR, 2020 WL 1984301, at *5 (N.D. Cal. Apr. 27, 2020) (collecting cases).

Accordingly, Petitioner is excused from exhaustion.

### b)  Merits of the Procedural Due Process Claim

Petitioner's motion for a temporary restraining order is based almost exclusively on his argument that he is entitled to release based on the risks of COVID-19. To the extent that he addresses his procedural due process claim, he insists that because he has been detained for eight months and it has been over six months since his bond hearing and there is no clear timeline for his potential release, his prolonged detention violates due process. (Dkt. No. 10 at 29:21-23 (citing *Diouf v. Napolitano*, 634 F.3d 1081, 1091-92 (9th Cir. 2011).) He contends that he is therefore entitled to a new bond hearing under the test proscribed in *Mathews v. Eldridge*, 424

U.S. 319 (1976).

Under *Mathews*, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." 424 U.S. at 334, 96 S.Ct. 893. The three-part *Mathews* test requires courts to consider "(1) the private interest affected, (2) the government's interest, and (3) the value added by alternative procedural safeguards to what has already been provided in the particular situation before the court." *Soto v. Sessions*, No. 18-cv-02891-EMC, 2018 WL 3619727, at *3 (N.D. Cal. July 30, 2018) (citing *Mathews*, 424 U.S. at 334-35).

### 1) Petitioner's Interest

"Courts have held that there is a strong private interest based on the duration of the detention." *Bent v. Barr*, No. 19-CV-06123-DMR, 2020 WL 1677332, at *8 (N.D. Cal. Apr. 6, 2020) (citing *De Paz Sales v. Barr*, No. 19-CV-04148-KAW, 2019 WL 4751894, at *6 (N.D. Cal. Sept. 30, 2019) (finding a strong private interest where the petitioner "risks continued detention absent a bond hearing")). In *Bent*, the court found that this factor weighed in petitioner's favor where he had been detained for over three years and had not had a bond hearing in over two years. In contrast, in *Soto v. Sessions*, No. 18-CV-02891-EMC, 2018 WL 3619727, at *3 (N.D. Cal. July 30, 2018), the court concluded that the liberty interest was not "at its apex" where the petitioner had been detained for "only slightly over six months total, and for only slightly over three months since her last bond hearing."

Petitioner has been detained eight months and it has been six months since his detention hearing before an immigration judge. Petitioner does not cite any cases which have recognized a strong private interest based on similar periods of detention, and indeed, courts routinely recognize a strong private interest only where the detention exceeded a year. *See Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 963 (N.D. Cal. 2019) ("There is no question in this case that Marroquin Ambriz has a strong private interest given that he has been in custody for 17 months and his last bond hearing was nearly 15 months ago.") (collecting cases). While the Court does not discount Petitioner's liberty interest, he is not facing the "specter of indefinite detention" as he "is being held under the authority of 8 U.S.C. § 1226(a) 'pending a decision' on his removal, and his appeal

of the Immigration Judge's denial of his applications for relief is pending before the BIA.[9] *Soto*, 2018 WL 3619727, at *3.

**2) Government's Interest**

The second *Mathews* factor addresses the government's interest. The government insists that the statutory detention framework under section 1226(a) grants it "broad discretion" to determine who should remain detained for removal proceedings and to increase the probability that individuals ordered removed are removed. (Dkt. No. 22 at 22:2-2.) There is no doubt that the government has a strong interest in effecting removal. *See Jimenez v. Wolf*, No. 19-CV-07996-NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) (citing *Demore v. Kim*, 538 U.S. 510, 531 (2003) ("While the justification for 8 U.S.C. § 1226(c) is based upon the Government's concerns over the risks of flight and danger to the community ... the ultimate purpose behind the detention is premised upon the alien's deportability.") (Kennedy, J., concurring)); *see also Bent*, 2020 WL 1677332, at *8 (citing H.R. REP. 104-469(I) at 122 (noting that "additional court-ordered procedures may disrupt the government's ability to conduct orderly and timely removal proceedings"). The government interest at stake here, however, "is the ability to detain Petitioner without providing him with another bond hearing, not whether the government may continue to detain him." *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019) (finding that "requiring the government to provide Petitioner with another bond hearing does not significantly undermine the government's interest in evaluating the evidence and in making those credibility determinations. If the Court requires the government to provide the Petitioner with another hearing, the IJ would still be the trier of fact at any such hearing"). Thus, while the government retains an interest in retaining discretion over grants and denials of bond hearings, the government's interest in not providing petitioner a new bond hearing is not compelling where, as here, the government has not argued that it would be costly or burdensome to conduct such a hearing.

//

---

[9] This conclusion does not preclude Petitioner from filing another petition if his detention in fact becomes prolonged or indefinite at a later time.

### 3) Additional Procedural Safeguards

The final *Mathews* factor considers the value of additional safeguards from an additional bond hearing. The government contends that the statutory scheme, Section 1226(a), provides its own procedural safeguards because individuals detained under this section "receive numerous opportunities for review of their custody decisions." (Dkt. No. 22 at 20:23.) The government highlights that individuals detained under this section receive an individualized custody determination from ICE, an individualized custody redetermination hearing from an Immigration Judge, and an opportunity to appeal the Immigration Judge's adverse decision to the BIA, which conducts a de novo review. *See* 8 C.F.R. § 1003.1(d)(3)(ii). Further, individuals detained under section 1226(a) may request a subsequent bond hearing if their "circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e).

The Immigration Judge denied Petitioner's initial request for bond on October 24, 2019. The Immigration Judge's denial of his initial request for bond is not part of the record here, but in his request for release in *Zepeda-Rivas*, Petitioner stated that he was initially denied release based on dangerousness. (Dkt. No. 23-3 at 2.) Petitioner thereafter availed himself of his right to request a custody redetermination hearing before an Immigration Judge. (Dkt. No. 4-3 at ¶ 11.) On May 8, 2020, the Immigration Judge denied Petitioner's request for a bond redetermination under section 1003.19(e) because he had not established a material change in circumstances to warrant a new bond hearing. (Dkt. No. 22-1 at 3.) In doing so, the Immigration Judge noted that he had "reviewed and weighed all the evidence of record" and considered Petitioner's argument that (1) his schizophrenia diagnosis, and (2) the COVID-19 pandemic constituted changed circumstances supporting his release. (*Id.*) The Immigration Judge found that these arguments failed to demonstrate a material change in circumstances because there was no argument as to why the evidence of Petitioner's schizophrenia diagnosis was not available earlier, and neither that argument nor Petitioner's COVID-19 argument "demonstrates a change that would potentially effect the court's previous finding that the respondent is a danger to society." (*Id.*) Although Petitioner has filed an appeal of the Immigration Judge's denial of his request for a bond redetermination hearing, Petitioner has not argued that the Immigration Judge erred as a matter of

law in finding that he had failed to demonstrate changed circumstances justifying a bond redetermination or that the Immigration Judge's decision was otherwise constitutionally inadequate.[10] Nor has he otherwise addressed the Immigration Judge's finding that he is a danger to society.[11] While an Immigration Judge may weigh a "number of factors in determining whether a [detainee] merits release from bond," *In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006), the Immigration Judge must "first determine[ ] that the [detainee] does not present a danger to the community." *Matter of Urena*, 25 I. & N. Dec. 140, 141 (BIA 2009). Thus, "where an IJ finds that a detainee is a danger to the community, the detainee must show a change in material circumstances that is relevant to the danger assessment." *Bent*, 2020 WL 1677332, at *6.

Rather than arguing that the Immigration Judge erred with respect to his request for a bond redetermination hearing, Petitioner appears to be making a passage of time argument; that is, that he is entitled to a new hearing because he has "been detained for over eight months, over six of which have been without a bond hearing, which clearly violates his constitutional rights." (Dkt. No. 28 at 16:16-18; *see also* Dkt. No. 4 at 33:1-3 ("Because Mr. Doe has been detained for over six months without a bond hearing, and there is no clear timeline for his potential release based on his appeal to the BIA, his prolonged detention violates due process.").) There is, however, no "bright-line rule for a due process right to receive periodic bond hearings." *Bent*, 2020 WL 1677332, at *7. As discussed *supra*, those courts that have found a constitutional violation have done so based on periods of detention well in excess of those here and courts are wary of finding that any particular length of detention gives rise to a procedural due process right to a second hearing. *See Lopez Reyes*, 362 F. Supp. 3d at 777 ("the Court notes that it is not making a finding that the mere passage of time requires a second bond hearing"); *see also Bent*, No. 19-2020 WL

---

[10] In his reply brief, Petitioner suggests that the government "surreptitiously" obtained a copy of the written decision before Petitioner's counsel received a copy. (Dkt. No. 28 at 11 n.2.) Even if so, Petitioner had a copy of the decision prior to submission of his reply brief.

[11] Indeed, Petitioner did not even disclose the basis for the Immigration Judge's denial of his request for a bond in his habeas petition, and instead, repeatedly argues in his habeas petition and other filings that he has not been found a danger. (Dkt. No. 4 at 33; Dkt. No. 10 at 30.) The Court is troubled by the lack of transparency in Petitioner's filings in this action when compared to his simultaneous filings in the *Zepeda-Rivas* action.

14

1677332, at *8.

Accordingly, the Court concludes that Petitioner has failed to show that he is likely to benefit from the additional procedural safeguards sought here—a new hearing—since he has not argued or offered evidence of changed circumstances that would affect the Immigration Judge's prior finding of dangerousness. *See Soto v. Sessions*, No. 18-CV-02891-EMC, 2018 WL 3619727, at *4 (N.D. Cal. July 30, 2018) ("[Petitioner] has failed to make any showing that []he would benefit as a practical matter in the circumstances of [his] case" from a new hearing).

***

Accordingly, the Court concludes that on balance the *Mathews* factors weigh in the government's favor. While Petitioner has a liberty interest arising from his prolonged detention, he has neither shown that his detention of 8 months with 6 months since his last bond hearing is so prolonged as to be unconstitutional nor that a new hearing would vindicate his liberty interest since he has not challenged the Immigration Judge's finding that he failed to show changed circumstances that would affect the Immigration Judge's prior dangerousness findings. Petitioner has therefore failed to demonstrate a likelihood of success on the merits of his habeas petition and the Court need not proceed further to evaluate the other *Winter* factors.

## CONCLUSION

For the reasons stated above, Petitioner's motion for a temporary restraining order is DENIED.

**IT IS SO ORDERED.**

Dated: May 27, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge