UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN FREDY MONTOYA ECHEVERRIA,<br><br>    Plaintiff,<br><br>  v.<br><br>WILLIAM BARR, et al.,<br><br>    Defendants. | Case No. 20-cv-02917-JSC<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. No. 5 |

Petitioner Juan Fredy Montoya Echeverria is a citizen and national of El Salvador who has resided in the United States since 2011. Petitioner voluntarily surrendered himself to Immigration and Customs Enforcement ("ICE") in August 2019 and he has been detained at the Yuba County Jail in Marysville, California ever since pursuant to 8 U.S.C. § 1226(a). On April 29, 2020, Petitioner filed a writ of habeas corpus alleging that his detention violated his Fifth Amendment due process rights.[1] (Dkt. No. 4.) Shortly thereafter, he filed a motion for a temporary restraining order which the Court denied because Petitioner had failed to demonstrate a likelihood of success on the merits of his legal claims. (Dkt. No. 34.) The habeas petition is now fully briefed. After careful consideration of the parties briefing, the Court concludes that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), and DENIES the habeas petition.

**FACTUAL BACKGROUND**

Petitioner was born in El Salvador and is 24 years old. (Dkt. No. 4-3 at 2; Dkt. No. 4-5 at

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 9, 13, 18.)

2.[2]) Prior to his detention, Petitioner lived in San Jose, California with his father. (Dkt. No. 4-3 at ¶ 37.)

Petitioner entered the United States in 2011 fleeing gang violence from the MS-13 gang in El Salvador. (Dkt. No. 4-4 at 11.[3]) After arriving in the United States, he started hearing voices. (*Id*. at 12.) He hears the voices every day, but they are especially bad at night and he cannot tell if the voices are real or imaginary. (*Id.*) Petitioner has several misdemeanor convictions between April 4, 2016 through June 20, 2019. (Dkt. No. 23-3 at 3; Dkt. No. 23-4 at 4-5.[4]) He was in the process of finishing his parole requirements when he was arrested by ICE. (Dkt. No. 4-3 at ¶ 4.) Although he had a reinstated removal order, Petitioner self-surrendered at the ICE office in San Francisco on August 28, 2019. (*Id.*) He was then taken to the Yuba County Jail where he remains. (*Id.*)

On October 24, 2019, Petitioner was denied bond by an Immigration Judge based on dangerousness. (Dkt. No. 4-3 at ¶ 5; Dkt. No. 23-3 at 2.) Prior to his arrest, Petitioner had filed an application for asylum, withholding of removal, and protection under the Convention Against Torture. (*Id.* at ¶ 5; Dkt. No. 4-4 at 14.) Following his detention, the Immigration Judge scheduled a Matter of M-A-M competency hearing.[5] (Dkt. No. 4-4 at 15.) In preparation for the

---

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[3] These facts are taken from Petitioner's pre-hearing brief submitted in support of his applications for asylum, withholding of removal, and protection under the Convention Against Torture. (Dkt. No. 4-4.) Although the brief says that the statement of facts is taken from Petitioner's declaration, the declaration itself is not part of the record here. The Court nonetheless relies on the facts as contained in the brief because Petitioner has not submitted a declaration in this action and there is no other source for these facts—his attorney's declaration likewise relies on the statement of facts in the pre-hearing brief. (Dkt. No. 4-3.)

[4] The record is unclear with respect to the number of Petitioner's convictions. The government contends that he has 10 arrests with 7 convictions. (Dkt. No. 23-3 at 3; Dkt. No. 23-4 at 4-5.) Petitioner vaguely objects that the "[t]he government highlighted arrests for which Petitioner was not convicted," but does not dispute that he has 7 convictions. (Dkt. No. 28 at 12:22-23.) Instead, Petitioner notes that his convictions were all for misdemeanors with sentences under 180 days. (*Id.*)

[5] In *Matter of M-A-M*, 25 I. & N. Dec. 474 (BIA 2011), the Board of Immigration Appeals ("BIA") set forth a framework for Immigration Judges to address issues of mental competency in cases where there is an indicia of incompetency.

hearing, on December 13, 2019, Petitioner had an in-depth psychological evaluation by a licensed clinical social worker who diagnosed him with schizophrenia and adjustment disorder. (*Id.*; Dkt. No. 4-11 at ¶¶ 3-4.) On February 6, 2020, Petitioner appeared in person at the San Francisco Immigration Court for his individual hearing at which he was found competent and credible.[6] (Dkt. No. 4-3 at ¶ 8.) A month later, the Immigration Judge denied his applications for relief and ordered Petitioner removed to El Salvador. (*Id.*) Two weeks later, Petitioner filed an appeal of the Immigration Judge's decision with the BIA. (*Id.* at ¶ 9.) Petitioner has submitted his appeal brief and is awaiting a decision. (Dkt. No. 36-1 at ¶ 6.) Petitioner's counsel attests that in her experience BIA appeals of a removal order take between six months to over one and a half years. (Dkt. No. 4-3 at ¶ 13.)

On March 19, Petitioner's counsel submitted an "urgent request for humanitarian parole, asking ICE to release [Petitioner] in light of the rapidly worsening global COVID-19 pandemic and [Petitioner's] severe mental illness." (*Id.* at ¶ 10.) Five days later, Petitioner's counsel was advised by telephone that the request was being denied because Petitioner was not an "arriving alien." (*Id.*) On March 27, Petitioner filed a motion for a subsequent custody redetermination based on changed circumstances likewise based on Petitioner's mental health condition and COVID-19. (*Id.* ¶ 11.) On April 3, the Immigration Judge denied the motion finding that "changed circumstances [were] not established." (*Id.*; *see also* Dkt. No. 22-1 (finding that neither changed circumstance "demonstrates a change that would potentially effect [sic] the court's previous finding that the respondent is a danger to society").) On April 9, Petitioner filed an appeal of the denial of the bond hearing with the BIA. (Dkt. No. 4-3 at ¶ 12.) A few days after Petitioner submitted his hearing brief, his counsel was advised that the appeal of the custody redetermination was not in the system. (Dkt. No. 36-1 at ¶ 9.) Petitioner had to resubmit his appeal brief in August. (*Id.* at ¶ 13.) Petitioner's counsel attests that in her experience appeals of

---

[6] According to Petitioner's counsel, at his competency hearing the Immigration Judge had "instituted certain procedural safeguards" for his individual hearing including that Petitioner was ordered to appear in person, counsel was allowed to ask leading questions, and Petitioner was allowed to take breaks during the hearing. (Dkt. No. 4-3 at ¶ 6.)

bond denials take between six months and one and a half years. (Dkt. No. 4-3 at ¶ 14.)

## PROCEDURAL BACKGROUND

### A. This Habeas Petition

On April 29, 2020, Petitioner filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Dkt. No. 4.) Shortly thereafter, Petitioner filed a motion for a temporary restraining order which the Court denied. (Dkt. No. 34.) The habeas petition is now fully briefed.

### B. The *Zepeda-Rivas* Action

On the same day Petitioner filed his habeas petition, United States District Judge Vince Chhabria issued a temporary restraining order ("TRO") in *Zepeda-Rivas v. Jennings*, No. 20-02731 VC (N.D. Cal.) ("*Zepeda-Rivas*"), and provisionally certified a class that includes current Yuba County Jail detainees. 2020 WL 2059848, at * 1-4. Judge Chhabria's order requires "ICE to provide information and access to detainees to facilitate a process of considering bail requests" and provides for expedited, individual bail determinations for class members in light of the COVID-19 pandemic and the conditions of confinement at the Yuba County Jail. *Id*. at *3. It is undisputed that Petitioner, as a current Yuba County Jail detainee, is a member of the *Zepeda-Rivas* class. In fact, on May 3, Petitioner filed a motion for release in *Zepeda-Rivas*. (*Zepeda-Rivas*, No. 20-2731, Dkt. No. 77-3.) Petitioner's motion for release was denied without prejudice on the same day he filed his motion for a temporary restraining order in this action. (*Id*. at Dkt. No. 107.) On June 3, Petitioner submitted a renewed request for release, which was denied on June 15. (*Id*. at Dkt. Nos. 321, 375.)

## JURISDICTION

A district court may grant a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim,* 538 U.S. 510, 523 (2003).

## DISCUSSION

The question underlying Petitioner's habeas petition is the same that was presented by Petitioner's motion for a temporary restraining order; namely, whether his continued detention

without a custody determination violates his Fifth Amendment due process rights. Petitioner insists that his substantive due process rights are violated based on his alleged risk of exposure to COVID-19 and that his prolonged detention without a bond hearing violates his procedural due process rights.

### A. Substantive Due Process

Petitioner's substantive due process claim is based on the health risk of contracting COVID-19 given his continued detention and in light of his unique health conditions. In denying his motion for a temporary restraining order, the Court declined to consider Petitioner's substantive due process claim because he had filed a motion for release as a class member in *Zepeda-Rivas* on the same basis and Judge Chhabria had denied that motion. (Dkt. No. 34 at 8.) The Court found that because Petitioner elected to file a request for release in that action, he could not seek the same relief before a different judge because he did not like the outcome. Since that time, Petitioner has filed a renewed request for release in the *Zepeda-Rivas* action which Judge Chhabria has again denied without prejudice. (*Zepeda-Rivas,* No. 20-02731 VC, Dkt. No. 375 (N.D. Cal. Jun. 15, 2020 Order).) Because Petitioner has elected to pursue his substantive due process claim in the *Zepeda-Rivas* action, the Court again declines to consider the claim here.

### B. Procedural Due Process

As a threshold matter, the government again argues that Petitioner has failed to exhaust his administrative remedies. The Court has already waived Petitioner's failure to exhaust because (1) the BIA has no jurisdiction to decide constitutional questions, and (2) the Court joined the vast majority of other courts which have "waived exhaustion based irreparable injury when an individual has been detained for months without a bond hearing, and where several additional months may pass before the BIA renders a decision on a pending appeal." (Dkt. No. 34 at 10.)

Petitioner's procedural due process claim is governed by the test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under *Mathews*, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." 424 U.S. at 334. The three-part *Mathews* test requires courts to consider "(1) the private interest affected, (2) the government's interest, and (3) the value added by alternative procedural safeguards to what has already been

provided in the particular situation before the court." *Soto v. Sessions*, No. 18-cv-02891-EMC, 2018 WL 3619727, at *3 (N.D. Cal. July 30, 2018) (citing *Mathews*, 424 U.S. at 334-35). In denying Petitioner's motion for a temporary restraining order, the Court found that while Petitioner had a liberty interest in indefinite detention, because his total period of detention was eight months and he had had a detention hearing before an immigration judge in the last six months, his liberty interest was not at its apex. The Court also concluded that the government lacked a strong interest in not providing Petitioner a new bond hearing because it had not argued that it would be costly or burdensome to provide a new hearing. The critical question then was whether Petitioner had shown that he would benefit from the additional procedural protections of a new hearing. The Court concluded that Petitioner had not done so because he had not argued or offered evidence of changed circumstances that related to the Immigration Judge's prior finding of dangerousness.

In his traverse, Petitioner argues that there are material changed circumstances which warrant reconsideration of the Court's prior determination; namely, that he will likely be detained for over a year without a bond hearing before he receives a decision on his pending BIA appeal.[7] There is, however, no "bright-line rule for a due process right to receive periodic bond hearings." *Bent v. Barr*, No. 19-CV-06123-DMR, 2020 WL 1677332, at *7 (N.D. Cal. Apr. 6, 2020). Indeed, those courts have that have found a constitutional violation have done so based on periods of detention in excess of those here and courts are wary of finding that any particular length of detention gives rise to a procedural due process right to a second hearing. *See Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019), appeal dismissed sub nom. *Reyes v. Bonnar*, No. 19-15604, 2019 WL 4855033 (9th Cir. May 8, 2019) ("the Court notes that it is not making a finding that the mere passage of time requires a second bond hearing"). In *Rodriguez Diaz v. Barr*, No. 4:20-CV-01806-YGR, 2020 WL 1984301 (N.D. Cal. Apr. 27, 2020), the court held that

---

[7] Petitioner points to problems with the BIA's processing his of bond appeal which required him to resubmit his brief and maintains that based on a six-month processing timeframe from the date he submitted his brief, it is unlikely the BIA will reach a decision before February 2021.

petitioner had "a strong privacy interest given that he has been in custody for approximately 16 months and his last bond hearing was nearly 14 months ago." *Id*. at *7 (citing *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 963 (N.D. Cal. 2019) ("There is no question in this case that Marroquin Ambriz has a strong private interest given that he has been in custody for 17 months and his last bond hearing was nearly 15 months ago."); *De Paz Sales v. Barr*, No. 19-CV-04148-KAW, 2019 WL 4751894, *5-7 (N.D. Cal. Sept. 30, 2019), appeal dismissed, No. 19-17415, 2020 WL 2765780 (9th Cir. Apr. 20, 2020), (finding prolonged detention after more than 14 months in custody without a bond hearing for over a year); *Sotelo Tarin v. Bonnar*, No. 19-cv-00519-CRB, 2019 WL 568921, at *7 (N.D. Cal. Feb. 12, 2019) (finding petitioner who had been detained for 15 months "likely to succeed in arguing that [he] had a due process right to a bond hearing"); *Meza v. Bonnar*, No. 18-cv-02708-BLF, 2018 WL 2554572, at *3 (N.D. Cal. June 4, 2018) (finding "serious questions going to the merits of Petitioner's claim that the Constitution requires periodic bond hearings for aliens in removal proceedings who have been detained for lengthy periods of time – here, 13 months")). Given that Petitioner had a bond hearing ten months ago and his appeal of his March 27 request for a custody redetermination based on the same claims as presented here is pending, the Court continues to find that Petitioner's liberty interest is not at its apex.[8]

Even if the Court were to conclude that Petitioner's private interest was heightened based on his additional three-month detention, this would not address the Court's finding that Petitioner had failed to demonstrate he would benefit from the additional safeguards of a bond hearing because he had not demonstrated changed circumstances that would affect the Immigration Judge's prior finding of dangerousness. *See Matter of Urena*, 25 I. & N. Dec. 140, 141 (BIA 2009) ("An Immigration Judge should only set a bond if he first determines that the alien does not present a danger to the community."); *Bent*, 2020 WL 1677332, at *6 ("where an IJ finds that a detainee is a danger to the community, the detainee must show a change in material circumstance that is relevant to the danger assessment."). Petitioner now argues that his subsequent diagnosis of

---

[8] This opinion does not preclude Petitioner from filing another petition if his detention in fact becomes prolonged or indefinite at a later time.

schizophrenia is "undoubtedly a 'changed circumstances'" and his treatment plan for addressing his schizophrenia "should affect the IJ's prior finding of dangerousness." (Dkt. No. 36 at 11:10-18.)  There are numerous problems with Petitioner's argument.  First, Petitioner makes it for the first time in his traverse.  In his initial habeas petition he argued that "he was not a danger" and did not disclose that the IJ had denied his bond application based on a dangerousness finding.  (Dkt. No. 4 at 33:20; Dkt. No. 4-3 at ¶ 5.)  Second, to the extent Petitioner contends that his schizophrenia diagnosis and medication plan undermine the IJ's prior finding of dangerousness, the IJ who considered Petitioner's March 27, 2020 request for a bond redetermination stated that he considered and weighed all of the evidence—including the evidence regarding Petitioner's schizophrenia diagnosis—and found that it did not "demonstrate[] a change that would potentially effect [sic] the court's previous finding that respondent is a danger to society."  (Dkt. No. 22-1 at 3.)  While Petitioner insists that the IJ's finding was in error, he does not dispute that he had the opportunity to present this evidence to the IJ.  *See Soto v. Sessions*, No. 18-CV-02891-EMC, 2018 WL 3619727, at *4 (N.D. Cal. July 30, 2018) (finding that petitioner failed to state a procedural due process claim because she had had a custody redetermination hearing two months prior and she had not shown how she would benefit from a second hearing).  Further, because Petitioner is detained under Section 1226(a), he can seek a bond redetermination under 8 C.F.R. § 1003.19(e) at any time based on changed circumstances.  *See Soto*, 2018 WL 3619727 at *5 (noting that because petitioner was "represented by counsel both in her immigration proceedings and in this petition, and [wa]s aware of her ability to seek a bond redetermination per § 1003.19(e) should changed circumstances warrant one, and to bring a habeas petition before this Court. [Petitioner] was well-equipped to take advantage of the due process she was afforded.").

Accordingly, the Court concludes that weighing Petitioner's interest, the government's interest, and the value a new bond hearing would add to the procedural protections already provided, due process does not entitle Petitioner to a new bond hearing at this time.  For the same reasons, the Court denies Petitioner's request for immediate release.

## CONCLUSION

For the reasons stated above, the Court DENIES Petitioner's habeas corpus petition under

28 U.S.C. § 2241.

**IT IS SO ORDERED.**

Dated: August 31, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge